**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**BLUE GENTIAN, LLC, et al.,**

**Plaintiffs,**

**v.**

**TELEBRANDS CORP., et al.,**

**Defendants.**

**Civil Action No. 13-4627 (FSH)**

**REPORT & RECOMMENDATION**

**PRESENTLY** before the Court is a combined Motion to Dismiss and Motion to Strike by Defendant, Ajit "A.J." Khubani ("Khubani"). Docket Entry No. 22. Khubani requests that the Court dismiss Plaintiffs' claims against him for indirect patent infringement for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See* Khubani's Brief in Support of the Motion to Dismiss ("Def.'s Br.") at 3-7, Docket Entry No. 22-1. Khubani also requests that the Court strike the Complaint under Fed. R. Civ. P. 12(f) for improperly incorporating patent claim charts. *Id.* at 8-11. Plaintiffs, Blue Gentian, LLC ("Blue Gentian") and National Express, Inc., ("NEI") (collectively "Plaintiffs"), oppose the motions, arguing that they have adequately plead claims against Khubani and that striking the pleading is inappropriate. *See* Plaintiffs' Brief in Opposition ("Pls.' Opp."), at 3, Docket Entry No. 36. The Court considers the positions of the parties without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons set forth below, the Court recommends that Khubani's Motion to Dismiss be granted and the Motion to Strike be denied.

## I. Procedural History

The underlying action is one of five cases presently consolidated before this Court relating to patents owned by Blue Gentian. *See* Order at Docket Entry No. 19. Each of the five

actions concern two United States patents: U.S. Patent No. 8,291,941 ("the '941 patent") and U.S. Patent No. 8,291,942 ("the '942 patent").[1] *See* Complaint ("Compl.") ¶13, at Docket Entry No. 1. Two cases, the instant Civil Action No. 13-4627 and Civil Action No. 13-7099, assert claims for infringement of a related patent, U.S. Patent No. 8,479,776 ("the '776 patent"). Compl. ¶14; *see also* Complaint ¶9 in Civil Action No. 13-7099, Docket Entry No. 1.

On or about July 31, 2013, Plaintiffs filed this action against Telebrands; Bed Bath & Beyond, Wal-Mart Stores, Inc. ("Wal-Mart"), the Walgreen Company, Rite Aid Corporation (together the "Retail Defendants"); and Khubani.[2] In Civil Action Nos. 12-6671 and 13-481, Plaintiffs asserted direct and indirect infringement claims against Telebrands for the '941 and '942 patents. In the instant case, Plaintiffs assert claims of direct and indirect infringement of the '776 patent by Telebrands (Count I & II); direct and indirect infringement of the '941, '942, and '776 patents by the Retail Defendants (Counts III – VIII); and indirect infringement of the '941, '942, and '776 patents by Khubani (Counts IX - XI).

Khubani filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) together with a Motion to Strike under R. 12(f). *See* Docket Entry No. 22. In terms of the motion to dismiss, Khubani argues that Plaintiffs failed to allege sufficient facts to support a finding of inducement of infringement. *See* Def.'s Br. at 3-7. First, Khubani argues that under new case law, Plaintiffs

[1] Of the five cases, three involve Telebrands: the instant case, Civil Action 13-4627, and Civil Actions 13-481 and 12-6671. Two others, Civil Action No. 13-1758 and Civil Action No. 13-7099, are patent infringement actions by Blue Gentian and National Express against Tristar Products.

Civil Action Nos. 12-6671 and 13-481 are mirror patent infringement actions. In 12-6671, Telebrands filed a declaratory action against Blue Gentian, NEI, and inventor Michael Berardi. In that case, the Court granted NEI's motion to amend to add patent infringement counterclaims. *See* Docket Entry Nos. 122 and 123. Civil Action No. 13-481 was filed by Blue Gentian against Telebrands in the United States District Court for the Southern District of Florida. That action was transferred to this Court in January 2012. This Court also granted Blue Gentian's motion to join NEI as a co-plaintiff on the infringement claims in the 13-481 case. *See* Docket Entry Nos. 81 and 83. On March 12, 2014, Telebrands filed appeals of those decisions before the Hon. Faith S. Hochberg, U.S.D.J. *See* Docket Entry No.130 at Civil Action No. 12-6671 and Docket Entry No.88 at Civil Action No. 13-481.

[2] Defendants Bed Bath & Beyond, Inc. and Rite Aid Corporation have since been voluntarily dismissed. *See* Docket Entry Nos. 17 & 50.

must pierce the corporate veil to impose personal liability, but they failed to do so. *Id.* at 4; Khubani's Brief in Reply ("Reply") at 3, Docket Entry No. 44. Second, apart from piercing the corporate veil, Khubani alleges that Plaintiffs failed to assert the specific intent to encourage infringement that is necessary to impose liability for inducement. *See* Def.'s Br. at 6. Instead, Khubani argues that Plaintiffs have only alleged that he is "President of Defendant Telebrands and performed his duties as President of the company," and that "there is simply not a single fact in the Complaint demonstrating any sort of culpable conduct or demonstrating a specific intent by Mr. Khubani to induce infringement." *Id.* at 7.

Khubani's second request is for the Court to strike the pleadings because Plaintiffs improperly included claim construction charts in the Complaint. Def.'s Br. at 7. Paragraph 29 of the Complaint states:

> It has become apparent to Plaintiffs that Telebrands has recently redesigned certain features located within the inlet and outlet couplers of the Pocket Hose. Nevertheless, as demonstrated in the claim charts attached as Exhibits "I" through "L" hereto, the Pocket Hose remains an infringement of the '941, '942, and '776 patents.

*Id.* Exhibits I though L are claim charts setting forth Plaintiffs' various contentions. *See id.* Khubani argues that by incorporating complex claim charts into the Complaint, Plaintiffs go far beyond the standard of pleadings as required by the Federal Rules of Civil Procedure and co-opt the Local Patent Rules. Def.'s Br. at 8. Since the patent rules provide a defined schedule for the submission of contentions, Khubani asserts he is prejudiced by having to respond to contentions early and without the benefit of the supporting documents required by the Rules.

Plaintiffs oppose the motion, arguing that they have sufficiently pled allegations that Khubani is liable for inducement of infringement. Pls.' Opp. at 2-10. Further, Plaintiffs assert

that Khubani's request to strike the pleading should be denied since it only asks the pleadings be stricken for being overly inclusive. *Id.* at 10-11.

On November 21, 2013, the Court consolidated 13-4627 with the related cases and entered a scheduling order setting forth the parties' discovery and case deadlines. *See* Docket Entry No. 49. These dates were revised when the Court consolidated the final fifth case and entered a new scheduling order for all cases on February 26, 2014. *See* Docket Entry No. 59.

## II. Background

The patents are purported to cover an expandable and contractible hose, marketed by Blue Gentian under the name "XHose." Compl. ¶¶13-14. The '941 patent, entitled "Expandable Hose Assembly," and the '942 patent, entitled "Expandable and Contractible Hose," were both issued on October 23, 2012. Compl. ¶14. The '776 patent, entitled "Expandable Garden Hose," is a continuation-in-part of the '941 and '942 patents and was issued on July 9, 2013. *Id.*

Pursuant to a licensing agreement, Blue Gentian granted NEI certain rights "to make, use, sell, offer for sale, import, market, promote and/or distribute expandable/retractable hoses embodying the inventions disclosed in the '941, '942, and '776 patents, within certain non-geographic markets." Compl. ¶15. The agreement defines these markets and grants NEI exclusivity in the "direct-to-consumer" and "retail" markets. *Id.* It is in these markets that Plaintiffs allege Telebrands sells its Pocket Hose product. *Id.*

Plaintiffs claim that Defendants have been on notice of the patents since they were issued. The '941 and '942 patents were issued on October 23, 2012, and on the same day, Plaintiffs and Defendants cross-sued each other on the patents' infringement and validity.[3] Compl. ¶15. When the '776 patent was issued on July 9, 2013, Plaintiffs sent a letter to Khubani and Telebrands through their counsel on that same day noticing the issuance of new patent. *Id.*

[3] *See* Civil Action No. 12-6671 and Civil Action No. 13-481.

¶28. The Retail Defendants also received notice of the patents-in-suit. *Id.* ¶27. Plaintiffs state they sent prior demand letters regarding the '941 and '942 patents on or around January 8, 2013, and renewed their demands in notice letters regarding the issuance of '776 patent. *Id.*

Plaintiffs assert Telebrands and Retail Defendants are liable for direct infringement and indirect infringement of the patents-in-suit. As Plaintiffs allege, "since August 2012 Telebrands has promoted and sold a knock-off expandable hose product embodying the inventions protected under the '941, '942 and now '776 Patents," and that about ten million units have been sold since October 2012. Compl. ¶17 & 21; *see also* Pls.' Opp. at 3. Following the chain of production and sale, Plaintiffs allege that Telebrands directly infringes upon the patents by "making, using, selling, and offering to sell, and upon belief, importing into the United States a hose product embodying the invention protected under the '776 Patent, and will continue to do so unless enjoined by this Court."[4] Compl. ¶31. Because Telebrands sells, offers to sell, and promotes the Pocket Hose product to the Retail Defendants and to end-user customers and encourages the further infringing sale or use of the infringing product, Plaintiffs urge that Telebrands is also liable for inducement of infringement. Compl. ¶¶36-38. Similarly, Plaintiffs claim the Retail Defendants are liable for direct infringement because of their sale and offering for sale of the Pocket Hose product and are liable for inducement through their encouragement of their customers to use the infringing Pocket Hose. Compl. ¶¶44, 49 & 50.

Plaintiffs assert only indirect infringement against Khubani and describe in several paragraphs his alleged role in the sale, offering for sale, promotion and/or use of the accused infringing Pocket Hose product. Plaintiffs state that Khubani "is the Owner, Chief Executive and President of Defendant Telebrands, and as such is responsible for overseeing the day to day

---

[4] Plaintiffs make identical claims under the '941 and '942 patents in the related cases. *See* Defendant Blue Gentian, LLC's Answer, Affirmative Defenses and Counterclaims, Civil Action No. 12-6671, Docket Entry No. 72; *see also* Amended Compl., Civil Action No. 13-481, Docket Entry No. 4.

operations of the company, including product development, marketing and sales of the accused Pocket Hose product." Compl. ¶8. Plaintiffs allege further:

> 100. Despite having knowledge of the issuance of the '776 Patent since at least the date of receipt of the July 9, 2013 letter from Plaintiffs, Khubani has overseen and directed the day to day operations of Telebrands with the specific intent to encourage and cause Telebrands's infringement of the '776 Patents.
>
> 101. Despite having knowledge of the issuance of the '776 Patent since at least the date of receipt of the July 9, 2013 notice letter from Plaintiffs, Khubani has promoted the accused Pocket Hose product with specific intent to encourage and cause the Retailer Defendants' and Telebrands customers' infringement of the '776 Patent.
>
> 102. Since at least the date of receipt of the July 9, 2013 notice letter from Plaintiffs, Khubani has had actual knowledge of the claims of the '776 Patent, and the fact that the Pocket Hose product infringes one or more of those claims. Upon information and belief, he has taken no steps to remedy any infringement.
>
> 103. Khubani has known that overseeing and directing Telebrands to produce the Pocket Hose product would cause the direct infringement of the '776 Patent.
>
> 104. Khubani has known that promoting the Pocket Hose product would cause the direct infringement of the '776 Patent.
>
> …
>
> 112. Despite having knowledge of the issuance of the '941 Patent since prior to its issuance on October 23, 2012, Khubani has overseen and directed the day to day operations of Telebrands with the specific intent to encourage and cause Telebrands's infringement of the '941 Patent.
>
> 113. Despite having knowledge of the issuance of the '941 Patent since prior to its issuance on October 23, 2012, Khubani has promoted the accused Pocket Hose product with specific intent to encourage and cause the Retailer Defendants' and Telebrands customers' infringement of the '941 Patent.
>
> 114. Since prior to its issuance on October 23, 2012, Khubani has had actual knowledge of the claims of the '941 Patent, and the fact

> that the Pocket Hose product infringes one or more of those claims. Upon information and belief, he has taken no steps to remedy any infringement.
>
> 115. Khubani has known that overseeing and directing Telebrands's production of the Pocket Hose product would cause the direct infringement of the '941 Patent.
>
> 116. Khubani has known that promoting the Pocket Hose product would cause the direct infringement of the '941 Patent.

*See* Compl. ¶¶101-104 ('776 patent) & ¶¶112-116 ('941 patent); *see also* ¶¶124-128 in relation to the '942 patents.[5]

In support of these allegations, Plaintiffs offer an instance of Khubani's alleged promotion of the Pocket Hose product:

> Khubani has publically touted the Pocket Hose on television and at conferences as a "revolutionary product[,]" a "game changer" and the best-selling product Telebrands has ever produced. During the "Inventor Day" event at the Response Expo held in San Diego, California on April 4, 2013, Khubani told the audience that he directed Telebrands to work with a first-class production team to produce a commercial featuring a celebrity (actor Richard Karn of *Home Improvement*) to promote the Pocket Hose to the general public. He also stated that the Pocket Hose now commands more than 90% of the expandable hose market in the United States, and that Telebrands manufactures 150,000 units of the product per day.

Compl. ¶18 (italics original). Further, Plaintiffs claim that at the same Inventor Day event, "Khubani stated that Wal-Mart has designated the product its 'VPI" (Volume Producing Item), or its 'Number One' Product, for 2013, meaning all Wal-Mart stores will get behind the product." Compl. ¶19.

[5] Paragraphs 124-128 reference the infringement claims relating to the '942 patent and are identical to paragraphs 112-116 except for the substitution of '942 in place of '941.

**III. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

*A. Statement of Law*

*a. R. 12(b)(6)*

When faced with a motion to dismiss for failure to state a claim, courts conduct a two-step analysis.[6] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual elements from the legal elements of the claim. *Id.* at 210-11. The court must accept the factual elements alleged in the well-pleaded complaint as true, but may disregard any legal conclusions. *Id.*; *see also Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998)("[W]e must accept as true all material allegations of the complaint and must construe the complaint in favor of the plaintiff.")

Second, the court must decide if the facts alleged are sufficient to show a "plausible claim for relief." *Fowler*, 578 F.3d at 210 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Ultimately, this two-part analysis is 'context specific' and requires the court to draw on 'its judicial experience and common sense' to determine if the facts pled in the complaint have 'nudged [plaintiff's] claims' over the line from '[merely] conceivable or [possible] to plausible.'" *Hobson v St. Luke's Hospital and Health Network*, 735 F.Supp.2d 206, 211 (E.D. Pa. 2010)(quoting *Fowler*, 578 F.3d at 211).

[6] Whereas claims for direct infringement must be plead at a minimum in accordance with Form 18, the pleading standard set out under *Iqbal* and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 556 (2007), applies to claims of indirect infringement. *See In re Bill of Lading Transmission and Processing System patent Litigation*, *("R+L Carriers",)* 681 F.3d 1323, 1340 (Fed. Cir. 2012); *Superior Industries, LLC v. Thor Global Enterprises Ltd.*, 700 F.3d 1287, 1295-96 (Fed. Cir. 2012).

*b. Inducement of Infringement*

Pursuant 35 U.S.C. § 271(b), "[w]hoever actively induced infringement of a patent shall be liable as an infringer." *Id.* "A finding of inducement requires both knowledge of the existence of the patent and 'knowledge that the induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 1367 (Fed. Cir. 2013) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011)). "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *See DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). For liability of corporate officers, it is insufficient to rely on an officer's position within a corporation or his or her knowledge of the allegedly infringing acts to establish personal liability. *See Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1412 (Fed. Cir. 1996); *see also MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F.Supp.2d 225, 234 (D. Del. 2012)("Allegations of the marketing activities of Defendants do not, on their own, demonstrate that Defendants knew such activities were infringing or that Defendants possessed the specific intent to encourage another's infringement."). Instead, the plaintiff must plead facts demonstrating an officer's culpability through his or her "actively and knowingly assist[ing] with the corporation's infringement." *Hoover*, 84 F.3d at 1412.

Under previous Federal Circuit precedent, a corporate officer could be held individually liable without the Court having to pierce the corporate veil. *See Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.3d 544, 553 (Fed. Cir. 1990)("[C]orporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement *regardless* of whether the circumstances are such that a court should disregard the corporate

entity and pierce the corporate veil."); *see also Wordtech Systems, Inc. v Integrated Networks Solutions*, 609 F.3d 1308, 1316 (Fed. Cir. 2010). Recently, however, the Federal Circuit in *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1365 (Fed. Cir. 2013), upheld a district court's dismissal of inducement claims against a corporate officer where the plaintiff had not pled a basis for piercing the corporate veil. *Id.*

*B. Analysis*

The parties dispute the impact of *Hall* on the case at bar. Khubani argues that *Hall* is binding precedent and requires that Plaintiffs plead allegations to pierce the corporate veil in order to impose personal liability on Khubani. Reply at 3. Plaintiffs challenge *Hall*'s applicability, arguing that the inducement claims in *Hall* related to events which occurred before the patent was issued. Pls.' Opp. at 6. Plaintiffs state the court's opinion does not speak to requiring veil piercing and only finds no reversible error in the court's application of state law for activities occurring before the patent issued. *Id.* Because the Court finds Plaintiffs' allegations against Khubani fail to state a claim for the reasons stated below, the Court finds it unnecessary to apply *Hall* at this time.[7]

This Court finds that Plaintiffs have not sufficiently alleged the specific intent and culpability necessary to maintain a claim for inducement of infringement against Khubani. Claims for inducement must meet the standard of *Iqbal* and *Twombly* and thus must recite more than the basic elements. *See R+L Carriers*, 681 F.3d at 1340. Where allegations rest on conclusory statements of the infringing party's culpability, courts will dismiss the counts of

---

[7] It is not necessary to apply *Hall* to the instant matter because the recommendation would be the same. If Khubani is indeed correct that the Federal Circuit now requires the piercing of the corporate veil to impose liability for inducement, the Court would again recommend dismissal of the claims against Khubani because Plaintiffs do not allege a basis for piercing the corporate veil. Should, however, Plaintiffs be correct, the Court's opinion rests on otherwise separate and independent grounds.

inducement. *See Artemi Ltd. v. Safe-Strap Co., Inc.*, 947 F.Supp.2d 473, 480 (D.N.J. 2013)(dismissing inducement claims because "Artemi pleads no facts concerning, for example, what Safe-Strap allegedly did to induce infringement, nor whom it allegedly induced."); *Gevo, Inc. v. Butamax Advanced Biofuels LLC*, 2013 U.S. Dist. LEXIS 94568, at *13 (D. Del. July 8, 2013); *Koninklijke Philips Electronics N.V. v. The ADS Group*, 694 F.Supp.2d 246, 253 (2010) (dismissing claims for inducement where the Court found that "[t]he Amended Complaint alleges only that defendants 'personally, actively, and knowingly controlled and directed' the replicator defendants in producing the [CDs that infringed].")

The majority of Plaintiffs' allegations depend on Khubani's position as the owner and president of Telebrands to establish his personal liability for inducement. *See, e.g.,* Compl. ¶100 ("Khubani has overseen and directed the day to day operations of Telebrands with the specific intent to encourage and cause Telebrands's infringement."). These allegations alone are insufficient and, moreover, seem to rely on entirely conclusory recitations of Khubani's "specific intent."

Setting these statements aside, Plaintiffs' Complaint contains only a single paragraph that incorporates actual conduct by Khubani.[8] In paragraph 18, Plaintiffs allege that in April, 2013, Khubani promoted the Pocket Hose at an exposition, introduced a marketing campaign with a celebrity, and provided details about the market success of the product. *See* Compl. ¶18. However, looking at the actual allegations, it appears that Khubani is merely reporting the activities and sales of his company, Telebrands. What is missing is the specific intent to cause infringement. It is clear that Plaintiffs want the Court to make the connection between knowing about the patents and knowing that Telebrands' sells the Pocket Hose to equal the intent to cause

[8] The Court notes that Plaintiffs quote or cite Khubani in other paragraphs in the Complaint. *See, e.g.,* Compl. ¶¶19 & 21. These statements are presented without context and it is unclear if they were in fact of intentional statements by Khubani or that it was information elicited as a function of his role as president of Telebrands.

infringement by others. But as stated in *DSU Medical,* knowledge of infringing activities is not enough. *See id.*, 471 F.3d at1306; *MONEC*, 897 F.Supp.2d at 234 (finding knowledge of marketing efforts and participation in the market insufficient to establish knowledge of the patent or intent to encourage infringement). Here, Plaintiffs lack any allegation of the culpability or intent of Khubani himself, and instead rely on general averments that his activities were intended to cause infringement. For this reason, the Court recommends Defendants' motion to dismiss under R. 12(b)(6) be granted as to Defendant Khubani.

Dismissal of the Amended Complaint for failure to state a claim would otherwise moot Khubani's second request to strike the pleadings under 12(f) as to him. However, because this is a Report & Recommendation, the Court will address both issues should the District Court decline to adopt the Recommendation to dismiss the inducement claims.

## IV. Motion to Strike the Pleadings under Fed. R. Civ. P. 12(f)

### *A. Statement of Law under R. 12(f)*

Pursuant to Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Id.* "As a general matter, motions to strike under Rule 12(f) are highly disfavored." *See FTC v. Hope Now Modifications, LLC*, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011). "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from the plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." *Garlanger v. Verbeke*, 223 F.Supp.2d 596, 609 (D.N.J. 2002)(internal quotations omitted).

Inclusion of extra material is not grounds for striking a pleading in its entirety. *See* 5C Fed. Prac. & Proc. Civ. § 1383 (3d ed.). While a verbose pleading may be in violation of the

principle of simplicity established by Rule 8, courts will deny a motion to strike where the additional information is inconsequential, not prejudicial, and/or perhaps helpful. *Id.; see also, Randolph Laboratories v. Specialties Development Corp.*, 62 F.Supp. 897, 900 (D.N.J. 1945). Courts, however, do strike extraneous evidentiary material in the pleadings when it is prejudicial or inadmissible. *See* 5C Fed. Prac. & Proc. Civ. § 1383 (3d ed.); *see also Murphy v. A. S. Kirkeby, Inc.*, 9 F.R.D. 725, 725 (S.D.N.Y. 1949).

*B. Analysis*

Paragraph 29 of Plaintiffs' Complaint incorporates by reference four claim charts attached as Exhibits I, J, K, and L. *See id.* Plaintiffs argue that the claim charts are relevant to the issues and thus striking them under 12(f) is inappropriate. *See* Pls.' Opp. at 10-11. Additionally, since Telebrands has filed an action for non-infringement, Khubani should have the requisite information to respond to the contentions in the pleadings. *See id.* at 11.

Khubani, however, argues the Complaint should be stricken because the inclusion of the charts violates Fed. R. Civ. P. 8(d)(1) requiring a "simple, concise, and direct" statement. *See* Def.'s Br. at 8. Moreover, the inclusion of the charts is severely prejudicial because Khubani would be forced to respond to the claim elements without the documentation and time allowed by the Local Patent Rules. *See id*. By inserting claim charts in the Complaint, Plaintiffs have disrupted the patent rules schedule, leapfrogging their own responsibilities and accelerating Khubani's obligations to the very first stages of litigation. *See id.* Khubani argues that it is put between a rock and a hard place: either respond to the claim contentions without the benefit of the patent rules or deny the allegations and potentially be bound by that denial without "further opportunity under the Local Patent Rules to modify or supplement their infringement claims." Reply at 7.

The Court denies Khubani's request to strike the claim charts incorporated into Plaintiffs' Complaint. Rule 12(f) is designed to simplify the matters before the court and remove allegations and material that is inapposite to its decision. *See id.* This is a patent infringement case and claim contentions are relevant to the action's eventual outcome.

That being said, the Court recognizes the potential prejudice that Khubani faces if forced to respond on a point-by-point bases to each of the contentions at the pleading stage or be bound by a general, early denial. Under the Local Patent Rules, the parties engage in a highly choreographed exchange of information. Certain information is to be traded with specified supporting documentation at specific intervals, which are often followed by another allotted period for responses and rebuttals. *See, e.g.*, L. Pat. R. 3. The Court is wary of encouraging patent holders to incorporate detailed contentions in its pleadings. To do so would in effect nullify the Local Patent Rules and put alleged infringers at a severe disadvantage.

The Court thus recommends a balance between the two. The material is pertinent to the case and should not be stricken. However, the Court recommends that Khubani should not be required at the pleading stage to respond to each point of the claim charts, but may fashion a response which adequately and appropriately responds to the allegation in Paragraph 29 of the Complaint. Khubani would then respond to Plaintiffs' contentions in due course, in accordance with the Local Patent Rules and the Scheduling Orders set by this Court.

**V. Conclusion**

For the reasons stated above, the Court recommends that Khubani's Motion to Dismiss be granted. Should the District Court decline to adopt the recommendation, this Court further recommends that Khubani's Motion to Strike the pleadings be denied and that Khubani respond

to the claim contentions in due course, in accordance with the Local Patent Rules and Scheduling Orders of this Court.

For good cause shown,

**IT IS** on this **29th** day of **April, 2014,**

**RECOMMENDED** that Khubani's Motion to Dismiss the claims against him for failure to state a claim be **GRANTED**; and it is further

**RECOMMENDED** that Khubani's Motion to Strike the Complaint under R. 12(f) be **DENIED**; and it is further

**RECOMMENDED,** should the Court decline the recommendation to dismiss the claims against him, that Khubani be granted leave to respond generally to Paragraph 29 of the Complaint without prejudice to responding to the claim contentions in due course; and it is further

**ORDERED** that the Clerk of the Court terminate the aforementioned motion at Docket Entry No. 22 accordingly; and it is further

**ORDERED** that the parties may file an objection to this Report & Recommendation within 14 days of the date of this Order pursuant to Fed. R. Civ. P. 72(b)(2) and L. Civ. R. 72.1(c)(2).

s/James B. Clark, III
**HONORABLE JAMES B. CLARK, III**
**UNITED STATES MAGISTRATE JUDGE**