**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BLUE GENTIAN, LLC and <br> NATIONAL EXPRESS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> TELEBRANDS CORPORATION et al., <br><br> Defendants. | Civil Action No. 13-4627 (FSH) (JBC) |

---

**PLAINTIFFS' RESPONSE TO DEFENDANT TELEBRANDS
CORPORATION'S OBJECTIONS TO MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION (DKT. NO. 68)**

---

Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

*Attorneys for Plaintiffs*
*Blue Gentian, LLC and National Express, Inc.*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES................................................................................................ ii

I.  INTRODUCTION ...................................................................................................1

II. ARGUMENT ..........................................................................................................2

   A. The Report Correctly Found National Express Has the Right to
      Exclude Telebrands from the Specific Markets in which It is Licensed.................2

   B. National Express Has Standing to Enforce
      the Patents-in-Suit with Blue Gentian .....................................................................6

   C. The Report Correctly Found Foreign Licensing Matters Inconsequential............10

III. CONCLUSION .....................................................................................................10

# TABLE OF AUTHORITIES

**CASES** Page(s)

*Abbott Lab. v. Diamedix Corp.,*
47 F.3d 1128 (Fed. Cir. 1995)……………..…………………………………………….........….7

*Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.,*
604 F.3d 1354 (Fed. Cir. 2010)……………………………………………………….....….7-9

*Delano Farms Co. v. Cal. Table Grape Comm'n,*
655 F.3d 1337 (Fed. Cir. 2011), *cert. denied,* 133 S. Ct. 644 (2012)……………………........7-9

*Ortho Pharm. Corp. v. Genetics Inst., Inc.,*
52 F.3d 1026 (Fed. Cir.1995)……………………………………………………………….7, 10

*Textile Prods., Inc. v. Mead Corp.,*
134 F.3d 1481 (Fed. Cir. 1998).......................................................................................................7

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SpA,*
944 F.2d 870 (Fed. Cir. 1991)........................................................................................................10

*WiAV Solutions, LLC v. Motorola, Inc.,*
631 F.3d 1257 (Fed. Cir. 2010)......................................................................................2, 6, 7, 9

**Statutes, Rules & Other Authorities**

35 U.S.C. § 100(d)……………………………………………………………………….......7

35 U.S.C. § 154……………………………………………………………………………...........10

I.      **INTRODUCTION**

Plaintiffs BLUE GENTIAN, LLC ("Blue Gentian") and NATIONAL EXPRESS, INC. ("National Express") respond to Defendant TELEBRANDS CORPORATION'S ("Telebrands") Objections to Magistrate Judge Clark's Report & Recommendation (Dkt. No. 68) [D.E. # 73] and request that the Objections be overruled.  Contrary to Telebrands's assertions, Magistrate Judge Clark correctly found that National Express has the right to exclude Telebrands from the specifically-defined markets in which it is licensed pursuant to its License & Distribution Agreement ("the Agreement") with patentee Blue Gentian.  His Report correctly follows current Federal Circuit precedent on licensee standing.  Telebrands's argument sidesteps the clear terms of exclusivity set forth in the Agreement in favor of hypothetical scenarios in which such terms could possibly be contravened.  The express terms of the written Agreement that governs the licensing relationship between Plaintiffs cannot be superseded or negated by hypothetical scenarios having no bearing on National Express's status as an exclusive licensee.

The Report cogently analyzes the Agreement and correctly concludes that Blue Gentian cannot grant Telebrands or any other party a license in the Retail and Direct-to-Consumer (DTC) Markets held by National Express and, therefore, National Express's right to exclude infringers such as Telebrands from those markets is not detracted. Nothing in the Agreement allows Blue Gentian to encroach on National Express's rights in those markets. Though National Express's rights under the Patents-in-Suit are not unfettered, they are sufficiently exclusive to confer standing to enforce those Patents in tandem with patentee Blue Gentian.

Telebrands's Objections conclude with argument as to licensing in Australia, New Zealand or perhaps other countries that is purely tangential.  The Report correctly notes that this litigation relates to the enforcement of U.S. Patents in a U.S. District Court against acts of

infringement occurring within the U.S., and National Express has standing to bring such litigation in tandem with Blue Gentian. The status of licenses and sublicenses under separate patents in other countries is inconsequential. The Objections should be overruled.

## II. ARGUMENT

### A. The Report Correctly Found National Express Has the Right to Exclude Telebrands from the Specific Markets in Which It is Licensed

Telebrands argues that Magistrate Judge Clark misconstrued ill-defined and overlapping fields of use defined in the Agreement. This characterization is simply incorrect. Blue Gentian is the undisputed owner of the Patents-in-Suit. Magistrate Judge Clark found that Blue Gentian licensed to National Express the exclusive right to make, use, sell and offer for sale the Licensed Product via specific channels – namely, the Retail and DTC Markets – defined in the Agreement. Report & Recommendation, ECF 68, p. 17. He did not, as Telebrands contends, simply find such exclusivity by the mere fact that Blue Gentian defined those channels. Rather, he found such exclusivity because the channels are specific and well-defined. *Id.*

As noted in the Report, the proper inquiry is whether National Express has the right to exclude Telebrands from the markets in which it is licensed. *WiAV Solutions, LLC v. Motorola, Inc.,* 631 F.3d 1257, 1266 (Fed. Cir. 2010). "A licensee is an exclusive licensee of a patent if it holds any of the exclusionary rights that accompany a patent." *Id.* The question for courts is not "whether [the licensee] ha[d] established that it ha[d] the right to exclude *all* others from practicing the patent. The question is whether [the licensee] has shown that it has the right under the patents to exclude the [d]efendants from engaging in the alleged infringing activity and therefore is injured by *the [d]efendants'* conduct." *Id.* at 1267 (emphasis in original). Even if the licensor could theoretically give licenses to others, a licensee would have standing as long as the licensee exercised an exclusive license to a patent not held by the infringer. *Id.* National

Express has the exclusive license within the Retail and DTC Markets defined in the Agreement. Telebrands has promoted and sold millions of units of the infringing Pocket Hose product in those markets.

With respect to the markets defined in the Agreement, Telebrands downplays or ignores language in the Agreement clearly delineating the different point-of-sale markets in which National Express and Blue Gentian retain exclusivity, in an attempt to recast the Agreement as non-exclusive in nature. For example, the Live Show Market is clearly defined as sales made or offered at trade shows, conventions and similar events. Amended Agreement, ¶1.8.5. Telebrands claims that Paragraph 2.3 of the Amended Agreement allows both Blue Gentian and National Express to sell in that market. This ignores National Express's acknowledgment in this Paragraph that Blue Gentian retains exclusivity in this market in the United States. *Id.* at ¶2.3. Similarly, the Agreement clearly states that "no rights shall be granted hereunder to National Express with respect to the Licensed Patents and/or Licensed Trademarks in the Premium Market, the Live Show Market, and/or the Commercial Market in the United States[1]," and that "it is acknowledged that BG shall retain such exclusivity with respect to the Commercial Market and the Premium Market in the United States." *Id.* at ¶¶2.1, 2.2. Paragraphs 2.2 and 2.3 expressly forbid National Express from directly or indirectly manufacturing, selling or distributing Licensed Products to or for any person or entity in the Commercial, Premium or Live Show Markets in the United States without Blue Gentian's prior consent.

The other markets in the Agreement are also well-defined and indicative of the exclusivity held by National Express, particularly against infringers such as Telebrands. For

---

[1] As noted in the Report, the Amended Agreement provides that National Express has the exclusive license, including the right to sublicense to third party distribution companies, in all of the markets defined in the Agreement in countries outside the United States. Report, p. 8.

2085471.1          3

example, the definition of Commercial Market specifically excludes Blue Gentian from selling or licensing to retailers or websites selling directly to consumers as contemplated in the definitions of Retail Market and DTC Market, and requires that a *different product constructed of different materials* be sold in that Market. *Id.* at ¶1.8.3. Similarly, the Premium Market includes products sold to businesses, institutions or commercial contractors that will brand the product with their respective names, logos or other custom indicia[2], *and* do not intend to re-sell to end retail customers. The Premium Market also specifically does not include retailers or websites selling directly to end customers. *Id.* at ¶1.8.4. These limitations clearly separate this market from the Retail and DTC Markets. Such a market is readily distinguishable from sales made to a retailer such as Wal-Mart or via a direct-to-consumer website, where only National Express or its sublicensee may sell or offer to sell Licensed Products.

The Agreement sets forth the specific markets in which National Express shall exclusively make, use, sell or offer for sale any Licensed Product, or grant sublicenses to do so. As noted in the Report, Blue Gentian granted exclusive rights to National Express in the Retail and DTC Markets. Report, p. 17. It did not otherwise reserve the right to grant licenses to others in those markets. *Id.* It cannot freely license others in the markets held by National Express. *Id.* at 20. Despite Telebrands's attempt to twist the meaning of these provisions, it remains clear that National Express has exclusive rights under the Patents-in-Suit in the Retail and DTC Markets. Telebrands is directly infringing on those rights. With respect to the DTC Market, it is beyond dispute that Telebrands has marketed and sold the infringing Pocket Hose product on television (e.g., advertisements featuring actor Richard Karn (*Home Improvement*)), print (e.g.,

---

[2] Claims 9 and 21 of the '941 Patent and Claims 10-12 of the '942 Patent pertain to the inclusion of such indicia on the outer tube of the expandable and contractible hose. These Claims are not asserted against the Pocket Hose, as it does not appear such indicia is included on the product. The '776 Patent contains no such Claims.

Sunday newspaper magazine ads) and/or internet channels (e.g., electronic mail advertising, www.pockethose.com) directly to end users of the product.

Indeed, one need only focus on the Retail Market to conclude that National Express possesses exclusionary rights sufficient to have standing to bring suit when joined with Blue Gentian. This market is expressly defined in the Agreement to include sales made or offered to large retailers such as Wal-Mart, CVS and Bed Bath & Beyond, in addition to smaller retailers. Amended Agreement, ¶1.8.2. It is beyond dispute that Telebrands has marketed and sold the Pocket Hose to retailers such as Wal-Mart, CVS and Bed Bath & Beyond for resale to the general public. Nevertheless, the pertinent point is that, at the relevant point of sale, National Express – not Blue Gentian, and certainly not Telebrands – has the exclusive right (and thus the right to exclude others) to sell or offer to sell products embodying the Patents-in-Suit to such retailers.

In lieu of the clear language of the Agreement, Telebrands offers a hypothetical scenario to support its argument. On Pages 5-6 of its Memorandum, it posits that a retailer may attend a trade show and purchase Licensed Product from Blue Gentian or a Live Show Market licensee, and thus concludes that National Express is merely a non-exclusive licensee in the Retail Market. This hypothetical does not support its argument, however. It is presumed that a buyer from Wal-Mart would identify themselves as such in agreeing to purchase large quantities of Licensed Products at a trade show, assuming such a purchase could be made there. In such instance, the Agreement would require Blue Gentian or its Live Show Market licensee to refer the buyer to National Express, the exclusive licensee for the Retail Market. Otherwise, a customer crossing markets unbeknownst to Blue Gentian or National Express should not render National Express's license non-exclusive any more than a customer who crosses borders of markets defined

geographically. Furthermore, such an erroneous or unauthorized sale does not make Telebrands a potential licensee. Neither its hypothetical scenario nor its word play with the phrases "right to exclude" and "exclusive right" has any bearing on the status of National Express as an exclusive licensee in the relevant markets.

As Magistrate Judge Clark noted, the appropriate question is whether National Express has the right under the Patents to exclude Telebrands from engaging in the alleged infringing activity and therefore is injured by Telebrands's conduct. *WiAV Solutions*, 631 F.3d at 1267. National Express has the right to exclude others from the Retail and DTC Markets under the Agreement, and Blue Gentian cannot encroach on that right. It has been injured by Telebrands's infringing conduct therein. It therefore has standing to bring suit alongside Blue Gentian to enforce the Patents-in-Suit against such infringement. The Objections should be overruled.

  B. **National Express Has Standing to Enforce the Patents-in-Suit with Blue Gentian**

Telebrands avoids the fact that National Express has been granted exclusionary rights under the Patents-in-Suit sufficient to confer standing to enforce those patents in tandem with patentee Blue Gentian, in favor of mischaracterizing the Agreement as having granted National Express a mere non-exclusive license. As set forth in Section II.A, *supra*, National Express has exclusionary rights. Those rights are not, however, unfettered. Nevertheless, it is well-settled that a license grant can be less than a "virtual assignment" yet still sufficiently exclusive in scope such that the licensee has standing to enforce the licensed patent if joined by the patentee. Such is precisely the case at hand, where National Express has been granted an exclusive license in the Retail and DTC Markets that is sufficient to confer standing to sue for infringement in tandem with patentee Blue Gentian.

In a patent infringement suit, the Patent Act provides that "[o]nly a patentee may bring an action for patent infringement." *Textile Prods., Inc. v. Mead Corp.,* 134 F.3d 1481, 1483 (Fed. Cir. 1998). "Title 35 defines 'patentee' as the party to whom the patent issued or any successors in title to the patent." *Id.* at 1483-1484; *see also* 35 U.S.C. § 100(d). Accordingly, a patent licensee may bring suit in its own name, without the patentee, if it holds an exclusive license that conveys "all substantial rights" under the patent, such that it is a "virtual assignment." *Id.* An exclusive licensee that holds less than "all substantial rights" under the patent, such as National Express, may also be permitted to bring suit, *but only* as a co-plaintiff with a patentee, such as Blue Gentian. *Id.*, citing *Abbott Lab. v. Diamedix Corp.,* 47 F.3d 1128, 1130-1133 (Fed. Cir. 1995). A *non*-exclusive licensee, meanwhile, has no right to exclude others and, as such, has no standing to sue for infringement, even if the patentee is joined as a party plaintiff. *See Ortho Pharm. Corp. v. Genetics Inst., Inc.,* 52 F.3d 1026, 1031 (Fed. Cir.1995); *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.,* 604 F.3d 1354, 1359 (Fed. Cir. 2010).

Recent Federal Circuit decisions have moved away from a focus on the restrictions placed on a licensee in determining whether a license is exclusive, and have held that restrictions on the licensee alone are not dispositive. *See, e.g., Delano Farms Co. v. Cal. Table Grape Comm'n,* 655 F.3d 1337, 1342-43 (Fed. Cir. 2011), *cert. denied,* 133 S. Ct. 644 (2012) (holding that licensee could sue even when licensor restrained the licensee's right to sue and maintained control over the right to sublicense); *WiAV Solutions,* 631 F.3d at 1266 (finding the licensee had standing to sue when others held a license and the licensor theoretically still retained the right to sublicense); *Alfred E. Mann Found.,* 604 F.3d at 1359 (holding that despite restrictions on licensee's right to sue and licensor's retention of the power to sublicense to others, licensee had an exclusive license and could have standing if it was joined by the patent owner).

In the *Alfred E. Mann* decision cited in the Report, the Federal Circuit found that despite restrictions on the licensee's right to sue (the license agreement required the licensor's prior approval for litigations, which it could deny) and the licensor's retention of the power to sublicense to others, the licensee had an exclusive license and would have standing. 604 F.3d at 1359. Even though the licensee had restrictions, there were also restrictions on the licensor preventing the licensor from granting others a license to the exclusive area covered by the license. *Id.* at 1362. On Page 7 of its Memorandum, Telebrands incorrectly focuses on the discussion in the *Alfred E. Mann* case directed to "a licensee's rights over the patentee's assignment of its rights or control over litigation," and fails to appreciate that these are but examples of restrictions on Blue Gentian from granting others a license to the Retail and DTC Markets exclusively licensed to National Express in the Agreement.

Restrictions on the licensee's sphere of exclusivity have been noted in other cases finding standing for the licensee. For example, in the *Delano Farms* decision, the Federal Circuit found that the license agreement did not give the licensee "*any right* to enforce the patent against suspected infringers." 655 F.3d at 1342 (emphasis added). The licensor also retained control over sublicenses, which could only be issued subject to the licensor's approval and, in some cases, direction. *Id.* at 1343. Nevertheless, the licensee could still be a party to the litigation, as long as it joined the licensor, because the agreement granted the licensee "exclusive right to, among other things, use, propagate and sell the patented varieties as well as to grant sublicenses." *Id.* at 1342-43.

Though subject to certain limitations and restrictions, National Express's license is exclusive in nature, and nothing in the Agreement allows Blue Gentian to encroach on its rights in the Retail and DTC Markets. For example, the Agreement allows National Express to issue

2085471.1                                    8

sublicenses without Blue Gentian's consent.  Amended Agreement, ¶2.1.  Contrast this provision with those evaluated in the *WiAV Solutions*, *Alfred E .Mann* and *Delano Farms* cases, in which the licensee's right or ability to issue sublicenses was limited.  The Agreement also does not allow *either* Blue Gentian or National Express to assign their rights or delegate their duties thereunder without each other's prior consent.  *Id.* at ¶12.4.

Furthermore, with respect to patent enforcement, the Agreement requires Blue Gentian and National Express to inform each other upon learning of infringement.  *Id.* at ¶5.4.1.  The Agreement then grants Blue Gentian and National Express each the right to sue for infringement, with the other party agreeing to be joined as a party plaintiff and cooperate in the prosecution thereof as reasonably necessary.  *Id.* at ¶¶5.4.2, 5.4.3.  Contrast these provisions with those evaluated in the *Delano Farms* decision, where the licensee had no right to bring suit whatsoever, or the *Alfred E. Mann* case, where the terms of the license agreement required the licensee to obtain the licensor's prior consent to bring suit.

As set forth above, Telebrands's challenge to National Express's standing downplays or ignores language in the Agreement clearly delineating the different point-of-sale markets in which National Express and Blue Gentian retain exclusivity, in an attempt to recast the Agreement as non-exclusive in nature. The remaining limitations and restrictions on the exclusive license granted to National Express in the Agreement, meanwhile, are similar to those noted by the courts in cases where the licensees nevertheless each had standing to sue for patent infringement if joined by the patentee.  Such limitations should not preclude National Express from having standing as a co-plaintiff in this action in tandem with the licensor/patentee, Blue Gentian, because the Agreement sufficiently grants National Express exclusionary rights under the Patents-in-Suit.  Telebrands's Objections are without merit and should be overruled.

  **C.** <u>**The Report Correctly Found Foreign Licensing Matters Inconsequential**</u>

  In addition to the foregoing arguments concerning licensee standing, Telebrands declares that a recent transfer of exclusive rights in Australia and New Zealand under patents in those countries corresponding to the Patents-in-Suit somehow renders National Express a bare, non-exclusive licensee without standing to enforce the Patents-in-Suit in the United States. As noted in the Report, National Express gave its written acknowledgement and consent to the transfer contemporaneously with the execution of the Exclusive Patent License Deed.

  The Report correctly recites that the Patent Act only pertains to the right to exclude others from making, using, offering for sale, selling or importing the invention in the United States. *See* 35 U.S.C. § 154; *see also Ortho Pharm. Corp. v. Genetics Inst., Inc.,* 52. F.3d 1026, 1033 (Fed. Cir. 1995); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SpA,* 944 F.2d 870, 875 (Fed. Cir. 1991). Thus, the granting of patent rights to another exclusive licensee or sublicensee solely in another country, under separate patents which are only enforceable in that country under its particular patent laws, is irrelevant to the present action, which is brought under *United States* Patents pursuant to the *United States* Patent Act by the patentee and its licensee having exclusive rights in the markets in which the accused Pocket Hose product has been marketed and sold *in the United States.* As noted in the Report, foreign licenses do not change the landscape of National Express's rights in the United States. Telebrands offers no authority to the contrary, and its argument is without merit. National Express has standing to enforce the Patents-in-Suit in the United States in tandem with Blue Gentian.

**III.** <u>**CONCLUSION**</u>

  For the reasons set forth herein, Telebrands's Objections to Magistrate Judge Clark's Report & Recommendation (Dkt. No. 68) should be overruled.

Dated: April 30, 2014

Respectfully submitted,

*/s/ George C. Jones*
Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
Telephone: (973) 292-1700
Facsimile: (973) 292-1767
E-mail: tcurtin@GrahamCurtin.com
gjones@GrahamCurtin.com


McHALE & SLAVIN, P.A.
Edward F. McHale (*pro hac vice*)
Brian M. Taillon (*pro hac vice*)
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
Telephone: (561) 625-6575
Facsimile: (561) 625-6572
E-mail: litigation@mchaleslavin.com

*Attorneys for Plaintiffs*
*Blue Gentian, LLC and National Express, Inc.*